UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | | |
|---|---|---|
| RINDA TUCKER, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 2:21-cv-00087-JAW |
| | ) | |
| LANTMÄNNEN UNIBAKE USA, INC.,[1] | ) | |
| | ) | |
| Defendant. | ) | |

## ORDER ON LANTMÄNNEN UNIBAKE USA, INC.'S REQUESTS TO STRIKE AND OTHER OBJECTIONS

With reluctance, the Court issues a separate order to resolve a moving party's multitudinous requests to strike a nonmovant's statements of material fact, answering each asserted objection, granting some and rejecting many. As the moving party's requests to strike in this case violated the letter and spirit of District of Maine Local Rule 56(e), the Court cautions counsel not to file similar requests to strike in the future.

## I.   BACKGROUND

On September 12, 2022, Lantmännen Unibake USA, Inc. (Lantmännen) filed a motion for summary judgment and statement of material facts. *Def.'s Mot. for Summ. J.* (ECF No. 54) (*Def.'s Mot.*); *Def.'s Local R. 56(b) Supporting Statement of Material Facts* (ECF No. 53) (DSMF). On October 12, 2022, Ms. Tucker filed a Local Rule 56(h) record, including affidavits and exhibits, *Index for Jt. R. in Support of Pl.'s*

---

[1]    Ms. Tucker misspelled Lantmännen in her complaint. *Notice of Removal*, Attach. 1, *Pl.'s Compl. for Gender and Age Discrimination* at 1 (ECF No. 1) (*Compl.*). Although the case caption has never been corrected, the Court sua sponte orders the caption amended to insert the correct spelling of the Defendant's name.

*Opp'n to Def.'s Mot. for Summ. J.* (ECF No. 55) (*Pl.'s R.*), and she responded to Lantmännen's statement of material facts, *Pl.'s Opp'n to Def.'s Statement of Material Facts* (ECF No. 57) (PRDSMF).  On October 13, 2022, Ms. Tucker filed a response to Lantmännen's motion for summary judgment.  *Pl.'s Mem. of Law in Opp'n to Def.'s Mot. for Summ. J.* (ECF No. 60) (*Pl.'s Opp'n*).  Ms. Tucker did not then file a statement of additional material facts.  On October 26, 2022, Lantmännen filed its reply, noting that Ms. Tucker had offered no facts under District of Maine Local Rule 56(c).  *Def.'s Reply in Support of Its Mot. for Summ. J.* at 1 (ECF No. 61) (*Def.'s Reply*).

On May 3, 2023, after noticing that she had failed to file a statement of additional material facts, Ms. Tucker filed a motion for leave to file one.  *Pl.'s Mot. for Leave to File Pl.'s Statement of Material Facts* (ECF No. 63) (*Pl.'s Leave Mot.*).  On May 12, 2023, Lantmännen filed an objection.  *Def.'s Resp. in Opp'n to Pl.'s Mot. for Leave to File Untimely Statement of Additional Facts* (ECF No. 64).  On May 24, 2023, Ms. Tucker filed a proposed Statement of Additional Material Facts.  *See Pl.'s Statement of Additional Material Facts* (ECF No. 67) (PSAMF).  The Court issued an order granting Ms. Tucker's motion for leave to file a statement of additional material facts on May 30, 2023.  *See Order on Pl.'s Mot. for Leave to File Untimely Statement of Additional Facts* (ECF No. 68).

In its May 30, 2023 order, the Court instructed the parties to consult with each other and agree, if possible, to a new briefing schedule.  *Id.* at 19.  On June 12, 2023, the parties submitted a joint status report.  *See Jt. Status Update Regarding Sanctions and Summ. J. Briefing Completion* (ECF No. 71).  In this status report,

Ms. Tucker stipulated that she would not file an amended response to Lantmännen's motion for summary judgment, and the parties agreed to a new briefing schedule. *Id.* at 1-2.

On June 30, 2023, the Court held a telephone conference with the parties, during which it requested that Ms. Tucker re-file her response to Lantmännen's motion for summary judgment. *Min. Entry* (ECF No. 73). On July 5, 2023, Ms. Tucker filed her amended response to Lantmännen's motion for summary judgment.[2] *See Pl.'s Amended Mem. of Law in Opp'n to Def.'s Mot. for Summ. J.* (ECF No. 75). On July 20, 2023, Lantmännen filed an amended reply to Ms. Tucker's opposition to its motion for summary judgment, *see Def.'s Reply in Support of Its Mot. for Summ. J.* (ECF No. 76), and a response to Ms. Tucker's statement of additional material facts, *see Def.'s Resp. to Pl.'s Statement of Additional Material Facts* (ECF No. 77) (DRPSAMF). Because Lantmännen's response to Ms. Tucker's statement of additional material facts contained requests to strike, Ms. Tucker filed a response to these requests to strike on July 28, 2023. *See Pl.'s Opp'n to Def.'s Req. to Strike Certain of Pl.'s Statement of Material Facts* (ECF No. 78) (*Pl.s Opp'n to Def.'s Req. to Strike*). In this order, the Court addresses and resolves Lantmännen's requests to strike and certain other objections by Lantmännen. Contemporaneously, the Court is issuing an order on Lantmännen's motion for summary judgment.

## II.   THE POSITIONS OF THE PARTIES

---

[2]    Ms. Tucker initially filed her amended response to Lantmännen's motion for summary judgment on July 3, 2023. *See Pl.'s Amended Mem. of Law in Opp'n to Def.'s Mot. for Summ. J.* (ECF No. 74). Due to formatting errors, the Clerk marked this initial filing as having been filed in error, making ECF No. 75 the operative filing.

### A.  Lantmännen's Requests to Strike

Ms. Tucker's statement of additional material facts consists of one hundred and sixty-two assertedly undisputed facts.  PSAMF ¶¶ 1-162.  In its response to Ms. Tucker's statement of additional material facts, Lantmännen requests to strike ¶¶ 10, 15, 16, 18, 19, 38, 39, 53, 54, 70, 71, 72, 89, 95, 97, 98, 105, 117, 122, 123, 124, 125, 126, 134, 135, 136, 137, 138, 139, 140, 141, 142, 143, 144, and 145.  *See* DRPSAMF ¶¶ 1-162.  In addition, Lantmännen repetitiously raises certain issues in positing denials and qualified responses.

First, Lantmännen moves to strike Ms. Tucker's statements of material fact to the extent the statements are grounded on Ms. Tucker's own affidavit.  DRPSAMF ¶¶ 10, 15, 16, 18, 19, 70, 89, 95, 97, 98, 105, 134, 135, 136, 137, 138, 139, 140, 145.  Quoting *Verrier v. BlueTriton Brands, Inc.*, No. 2:20-cv-00443-JAW, 2022 U.S. Dist. LEXIS 144116, at *73-74 (D. Me. Aug. 12, 2022), Lantmännen maintains that the Court should not accept Ms. Tucker's "self-serving affidavit."  DRPSAMF ¶ 10.  Lantmännen says that the affidavit consists solely of Ms. Tucker's own subjective beliefs without factual support and that Ms. Tucker filed the affidavit "***only after***" Lantmännen filed for summary judgment.  *Id.* (emphasis in original).  For each request to strike on this basis, Lantmännen contends that Ms. Tucker's affidavit contradicts her other sworn testimony.  *Id.*

Second, Lantmännen objects to Ms. Tucker's statements of additional material fact where her record citation is to the unverified complaint.[3]  DRPSAMF ¶¶ 14, 56, 61, 71, 72, 122, 123, 124, 125, 126, 129, 141, 142, 143, 144.

## B.  Rinda Tucker's Opposition

In her opposition to Lantmännen's requests to strike, Ms. Tucker first notes that Federal Rule of Civil Procedure 56(c)(4) expressly allows a party to rely on an affidavit in response to a motion for summary judgment so long as the witness is competent, and the affidavit is based on personal knowledge.  *Pl.'s Opp'n to Def.'s Req. to Strike* at 1-2.  As regards Lantmännen's claim that her affidavit contradicts her prior testimony about the alleged five-year offer, Ms. Tucker points to parts of her deposition in which she described Mr. Minden's alleged five-year offer.  *Id.* at 2-3.

Turning to Lantmännen's objections to her statements of additional material fact supported only by a record citation to her complaint, Ms. Tucker first claims that Lantmännen submitted her complaint into the summary judgment record and, as a result, the "complaint should . . . be available for" her use.  *Id.* at 6.  She then says that Lantmännen "submitted in the summary judgment record Tucker's sworn verified Maine Human Rights Complaint in which she made the subject allegation[s]."  *Id.*  For some of these objections, Ms. Tucker cites portions of her

---

[3]      Lantmännen also raises a series of requests to strike, denials, qualifications, and objections about its handling of so-called comparable employees and their sales performance.  DRPSAMF ¶¶ 25, 27, 29, 31, 33, 35, 37, 38, 39, 44, 46, 48, 50, 52, 53, and 54.  The Court has addressed those objections in its order on the motion for summary judgment.

deposition transcript that support her statement, which were not included in her original statement of additional material facts. *See id.* at 7.

Ms. Tucker also responds to Lantmännen's objections to evidence about the performance of Greg Lutes, *id.* at 5-6, and she addresses Lantmännen's position about whether the Court should consider her affidavit in other evidentiary matters, asserting that it is proper for the Court to consider the affidavit regardless of whether it is "self-serving," *e.g.*, *id.* at 13.

## III.  DISCUSSION

### A.  Overview

District of Maine Local Rule 56(e) addresses motions to strike:

**(e) Motions to Strike Not Allowed**

Motions to strike statements of fact are not allowed.  If a party contends that an individual statement of fact should not be considered by the court, the party may include as part of the response that the statement of fact "should be stricken" with a brief statement of the reason(s) and the authority or record citation in support.  Without prejudice to the determination of the request to strike the party shall admit, deny or qualify the statement as provided in this rule.  A party may respond to a request to strike either in the reply statement of material facts as provided in this rule or, if the request was made in a reply statement of material facts, by filing a response within 14 days.  A response to a request to strike shall be strictly limited to a brief statement of the reason(s) why the statement of fact should be considered and the authority or record citation in support.

D. ME. LOC. R. 56(e).  Lantmännen's requests to strike do not comply with either the letter or spirit of this local rule.

The District adopted this version of the Local Rule because the summary judgment process had become consumed by evidentiary objections.  Often dispositive

motions were accompanied by motions in limine or motions to strike, which were straining judicial resources and transforming summary judgment practice in the District into evidentiary disquisitions. The District altered Local Rule 56(e) to make certain that parties would not file separate motions to strike and that their evidentiary objections would be terse and not drive the resolution of the dispositive motion. *See id.* (demanding "a brief statement of the reason(s)").

Lantmännen violated Local Rule 56(e) by filing prolix and academic requests to strike. For example, Lantmännen's request to strike PSAMF ¶ 10 runs on for three pages with a cascade of caselaw citations and a two-paragraph block quote from one of this Court's prior decisions. *See* DRPSAMF ¶ 10. Other requests to strike are equally prolix. In its response to Ms. Tucker's statements of fact, Lantmännen requests that the Court strike thirty-five out of one hundred and sixty-two statements. Lantmännen's filing provoked Ms. Tucker to file a separate, eighteen-page response to its requests to strike. *Pl.'s Opp'n to Def.'s Req. to Strike* at 1-18. Addressing Lantmännen's voluminous requests to strike, the Court is faced with the prospect that summary judgment practice is sliding back into old, bad practice habits in violation of the Rule.

### B.   Self-Serving Affidavits: An Overview

In response to Lantmännen's motion for summary judgment, on October 12, 2022, Ms. Tucker filed an affidavit dated October 10, 2022 consisting of nine paragraphs in which she proffered her own personal recollections of some of the facts in this case. *Pl.'s R.*, Attach. 6, *Aff. of Rinda Tucker* ¶¶ 1-9. Lantmännen requests

that the Court strike Ms. Tucker's statements of material fact supported solely by the

affidavit.  For legal authority, it quotes *Verrier*:

> To begin, Rule 56 of the Federal Rules of Civil Procedure states that a
> party may use an affidavit to "support or oppose a motion [for summary
> judgment]" if the affidavit is "made on personal knowledge, set[s] out
> facts that would be admissible in evidence, and show[s] that the affiant
> . . . is competent to testify on the matters stated." FED. R. CIV. P. 56(c)(4).
> However, under limited circumstances, a party's use of an affidavit to
> oppose summary judgment may be restricted. First, "[w]hen an
> interested witness has given clear answers to unambiguous questions,
> [s]he cannot create a conflict and resist summary judgment with an
> affidavit that is clearly contradictory, but does not give a satisfactory
> explanation of why the testimony is changed." *Colantuoni v. Alfred
> Calcagni & Sons*, 44 F.3d 1, 4-5 (1st Cir. 1994).  In other words, the
> Court may not consider an affidavit that is nothing more than "an
> attempt to manufacture an issue of fact in order to survive summary
> judgment." *Orta-Castro v. Merck, Sharp & Dohme Quimica P.R., Inc.*,
> 447 F.3d 105, 110 (1st Cir. 2006).
>
> To determine whether an affidavit is an attempt to manufacture an
> issue of material fact "courts consider the timing of the affidavit, the
> party's explanation for the discrepancies, and also the number of times
> the party was deposed." *Sanchez-Estrada v. Mapfre Praico Ins., Co.*, 84
> F. Supp. 3d 90, 93 (D.P.R. 2015) (citing *Orta-Castro*, 447 F.3d at 110).
> As to timing, execution of an affidavit "after the moving party moves for
> summary judgment suggests ill motive." *Id.* (citing *Colantuoni*, 44 F.3d
> at 5; *Torres v. E.I. Dupont De Nemours & Co.*, 219 F.3d 13, 20-21 (1st
> Cir. 2000)); *see also Orta-Castro*, 447 F.3d at 110.  Moreover, a post-
> deposition affidavit may also be suggestive of ill-motive if the affiant was
> represented by an attorney during the deposition and the attorney had
> an opportunity to ask clarifying questions or raise additional issues
> during questioning.  *Sanchez-Estrada*, 84 F. Supp. 3d at 93.

*Verrier*, 2022 U.S. Dist. LEXIS 144116, at *73-74.

This quoted language reveals the following: (1) Rule 56(c)(4) expressly allows

a party to file an affidavit to oppose (or support) a motion for summary judgment; (2)

a party's use of an affidavit is restricted only "under limited circumstances," namely

(3) the affiant has to have given "clear answers to unambiguous questions," (4) the

affidavit has to contradict what the witness said previously, and (5) the affiant must not have given a "satisfactory explanation of why the testimony is changed."

In addition, *Verrier* observes that "an affidavit is insufficient to oppose a motion for summary judgment where it 'merely reiterate[s] allegations made in the complaint, without providing specific factual information made on the basis of personal knowledge.'"  2022 U.S. Dist. LEXIS 144116, at *74 (quoting *Santiago-Ramos v. Centennial P.R. Wireless Corp.*, 217 F.3d 46, 53 (1st Cir. 2000)).

But *Verrier* also says that "[a] subsequent affidavit that merely explains, or amplifies upon, opaque testimony given in a previous deposition is entitled to consideration in opposition to a motion for summary judgment." *Id.* at *75 (alteration in original) (quoting *Gillen v. Fallon Ambulance Serv., Inc.*, 283 F.3d 11, 26 (1st Cir. 2002)).

Moreover, the First Circuit has repeatedly held that a "party's own affidavit, containing relevant information of which [s]he has first-hand knowledge, may be self-serving, but it is nonetheless competent to support or defeat summary judgment." *Velázquez-García v. Horizon Lines of P.R., Inc.*, 473 F.3d 11, 18 (1st Cir. 2007) (quoting *Santiago-Ramos*, 217 F.3d at 53 (quoting *Cadle Co. v. Hayes*, 116 F.3d 957, 961 n.5 (1st Cir. 1997)); *see Verrier*, 2022 U.S. Dist. LEXIS 144116, at *75.

As regards Lantmännen's objection to the timing of Ms. Tucker's affidavit, "[a]lthough the First Circuit has found the timing of the execution of a post-deposition affidavit probative of ill motive, it has not held that a district court may strike a post-summary judgment affidavit solely based on when the affidavit was filed, without

9

evidence of a contradiction between the testimony." *Verrier*, 2022 U.S. Dist. LEXIS 144116, at \*76-77 (citing *Escribano-Reyes v. Prof'l Hepa Certificate Corp.*, 817 F.3d 380, 387 (1st Cir. 2016); *Orta-Castro*, 447 F.3d at 110; and *Colantuoni*, 44 F.3d at 4-5).

With these principles in mind, the Court turns to Lantmännen's objections.

### C.    Requests to Strike

#### 1.    PSAMF ¶ 10

PSAMF ¶ 10 reads:

> Tucker enjoyed her employment with Smithfield, and she received a yearly bonus.  She had no intention of leaving employment with Smithfield.

Lantmännen contends that the Court must strike this seemingly innocuous proposition because it is supported by Ms. Tucker's own "self-serving affidavit," was executed only after Lantmännen filed its dispositive motion, and is allegedly contradicted by her prior deposition testimony.  DRPSAMF ¶ 10.  Lantmännen points to testimony in Ms. Tucker's December 2021 deposition that she had made a note on her personal calendar on March 17, 2017 that she was "happy" to be "leaving Smithfield." *Id.*  When asked why she was happy, Ms. Tucker testified that she "was more interested in selling Danishes and also not selling meat and I liked where I was going with [Lantmännen]." *Id.*

For the Court to grant Lantmännen's request to strike, Lantmännen must show that Ms. Tucker's affidavit contradicts her earlier deposition testimony. *Compare Colantuoni*, 44 F.3d at 4-5 ("When an interested witness has given clear

answers to unambiguous questions, he cannot create a conflict and resist summary judgment with an affidavit that is clearly contradictory, but does not give a satisfactory explanation of why the testimony is changed"), *with Gillen*, 283 F.3d at 26 ("A subsequent affidavit that merely explains, or amplifies upon, opaque testimony given in a previous deposition is entitled to consideration in opposition to a motion for summary judgment").

Contrary to Lantmännen's position, the Court sees no conflict whatsoever between the quoted portions of Ms. Tucker's depositions and her later-filed affidavit. As the Court interprets it, in her affidavit, Ms. Tucker simply says that before she was approached by Michael Minden of Lantmännen, she enjoyed her employment at Smithfield Foods and had no intention of leaving. *Tucker Aff.* ¶ 2. However, as she stated in her depositions, when given the opportunity to work for Lantmännen, she considered the Lantmännen position as preferable to Smithfield. *Stipulated R.*, Attach. 24, *Deposition of Rinda Tucker - Dec. 16, 2021* at 9:20-10:7 *(Dec. Tucker Dep.*). There is simply no conflict between an employee being happy at one job and believing she might be happier in another, in essence viewing a new job as a better opportunity. The Court denies Lantmännen's request to strike PSAMF ¶ 10.

### 2. PSAMF ¶¶ 14, 15, and 16

PSAMF ¶ 14 reads:

> In return for her hire, Minden required Tucker to remain employed with Defendant for a minimum of five years.

Lantmännen denies PSAMF ¶ 14 based on Ms. Tucker's citation to her unverified complaint. DRPSAMF ¶ 14. The Court agrees with Lantmännen that Ms.

Tucker's citation to an unverified complaint is typically improper because the alleged facts in an unverified complaint are not admissible evidence. *Reed v. LePage Bakeries, Inc.*, No. 98-450-P-H, 2000 U.S. Dist. LEXIS 2454, at *1 n.2 (D. Me. Feb. 29, 2000). Here, Ms. Tucker's complaint was not verified. *See Notice of Removal*, Attach. 1, *Pl.'s Compl. for Gender and Age Discrimination* at 1-5 (*Compl.*). However, in addition to her complaint, Ms. Tucker cites her own deposition, which is competent evidence. PSAMF ¶ 14 (citing *Stipulated R.*, Attach. 1, *Deposition of Rinda Tucker - Oct. 8, 2021* at 52:17-21 (*Oct. Tucker Dep.*)).

Lantmännen also denies PSAMF ¶ 14 based on a litany of facts in the record that it claims undercut the statement. *See* DRPSAMF ¶ 14. Only two of the facts Lantmännen cites are directed at Ms. Tucker's conversation with Mr. Minden. First, Lantmännen claims that PSAMF ¶ 14 contradicts Ms. Tucker's deposition testimony that "she did not know why Minden allegedly said, 'give me five years.'" DRPSAMF ¶ 14 (citing *Oct. Tucker Dep.* at 51:14). The statement Lantmännen cites was made during the following exchange:

> Q. And when [Mr. Minden] hired -- when you were talking to him about Lantmännen, he said I just need you to work for five years, was that also an indication that he was going to retire in five years?
> A. No, he just -- I don't know why he said it. He says give me five years of employment, would you give me five years and I said yes.
> Q. So he was asking if you could commit to work for five years?
> A. Yes, and I was -- I was doing well with the company. I liked, you know, working for Mike.

*Oct. Tucker Dep.* at 51:10-20.  Viewing the record in the light most favorable to Ms. Tucker, the Court concludes that PSAMF ¶ 14 does not contradict Ms. Tucker's deposition testimony and rejects Lantmännen's denial insofar as it rests on this basis.

Next, Lantmännen contends that Mr. Minden "provided a sworn declaration stating that he never promised that Plaintiff would have a guaranteed length of employment nor was he aware of her having any employment contract."  DRPSAMF ¶ 14 (citing *Stipulated R.*, Attach. 70, *Decl. of Michael Minden* (*Minden Decl.*)).  Mr. Minden wrote in his declaration that "[a]t no point during the hiring process nor during her employment did I ever promise or guarantee Ms. Tucker five years of employment with Lantmännen Unibake."  *Minden Decl.* ¶ 12.  Mr. Minden's statement only serves to create a disputed fact, and because the Court must view disputed facts in the light most favorable to Ms. Tucker for purposes of the pending motion for summary judgment, the Court rejects Lantmännen's denial insofar as it rests on Mr. Minden's version of events which is contradicted by Ms. Tucker's record evidence. The Court further declines to specifically address the other factual bases for Lantmännen's denial, as it rejects all of them as beyond the scope of PSAMF ¶ 14 and, in any event, the Court is required to view conflicting evidence in the light most favorable to Ms. Tucker.

Lantmännen further claims that Ms. Tucker's failure to preserve her notes of the conversation with Mr. Minden during which the five-year employment guarantee was allegedly made constitutes spoliation.  In support of this allegation, Lantmännen notes that "Plaintiff maintained an array of other notes and calendars from 2017 to

13

2020 concerning her employment with Lantmännen" and suggests that "had Plaintiff's notes of her conversation with Minden supported her claims, she would have preserved them and produced them in discovery." DRPSAMF ¶ 14.

The proponent of a spoliation claim "must proffer evidence sufficient to permit the trier to find that the target knew of (a) the claim (that is, the litigation or the potential for litigation), and (b) the document's potential relevance to that claim." *Testa v. Wal-Mart Stores, Inc.*, 144 F.3d 173, 177 (1st Cir. 1998); *see also Pelletier v. Magnusson*, 195 F. Supp. 2d 214, 235-37 (D. Me. 2002) (applying the same standard at the summary judgment stage). Here, Lantmännen has not presented any evidence of when Ms. Tucker destroyed her notes or whether she knew of her potential claims against Lantmännen when she did so. Instead, Lantmännen asks the Court to infer the basis for its spoliation claim based on the existence of other documents. The Court finds such speculation insufficient to support a spoliation claim.

In a similar vein, Lantmännen requests that the Court strike two other statements of material fact proffered by Ms. Tucker, and supported only by a citation to her affidavit, relating to Ms. Tucker's asserted understanding of Mr. Minden's statements during her job interview about Lantmännen's requiring a five-year employment commitment from her.[4] DRPSAMF ¶¶ 15, 16. The gist of Lantmännen's requests to strike is that Ms. Tucker's affidavit contradicts her deposition testimony

---

[4]        These statements are PSAMF ¶¶ 15 and 16. DRPSAMF ¶¶ 15, 16. PSAMF ¶ 15 reads: "Tucker understood Minden's requirement of employment for five years meant she was assured employment with Defendant for five years." PSAMF ¶ 16 reads: "Lantmannen subsequently sent [Ms. Tucker] a written offer of employment. The offer did not reference any length of employment. The omission of the length of employment did not concern [Ms. Tucker] because [she] trusted Mr. Minden to keep [their] agreement regarding the length of employment."

in which she acknowledged that she did not know why Mr. Minden made the statements and admitted that none of the employment documents between Lantmännen and herself refers to a guaranteed length of employment. *Id.*

The narrow rule in *Colantuoni* does not apply here. First, Ms. Tucker has not filed her affidavit in "an attempt to manufacture an issue of fact in order to survive summary judgment." *Orta-Castro*, 447 F.3d at 110. Ms. Tucker has maintained from the outset of this lawsuit that Mr. Minden promised her five years of employment. *Compl.* ¶ 5 ("In return for her hire, Minden requested Tucker remain employed with Defendant for a minimum of five years"). Also, Ms. Tucker's admission that she does not know why Mr. Minden made the reference to five years is merely a concession that she did not know what was in Mr. Minden's mind as he spoke.

Notwithstanding the above, the Court also concludes that none of the exchanges cited by Lantmännen in support of its requests to strike contradicts Ms. Tucker's earlier testimony. In support of its objection to PSAMF ¶ 15, Lantmännen argues that "Plaintiff testified that her employment offer letter accurately described the terms of her employment at Lantmännen" and "[t]he offer letter does not guarantee or promise any set length of employment." DRPSAMF ¶ 15 (citing *Oct. Tucker Dep.* at 72:2-7; and *Stipulated R.*, Attach. 12, *Letter from Ralph Hoffman, Director of Sales, to Rinda Tucker* (Mar. 20, 2017) (*Lantmännen Offer Letter*)). In urging the Court to reject Lantmännen's arguments, Ms. Tucker cites a different portion of her deposition testimony:

> Q. So when Mr. Minden said I just need you to work for five years at
> Lantmannen, did you understand that to be a guarantee of five years of
> employment irrespective of your performance?
> A. I believe so, yes.

*Oct. Tucker Dep.* at 52:17-21.  Additionally, the Court notes the following exchange

from Ms. Tucker's deposition:

> A. [Mr. Minden] said can you do this and give me five years of
> employment at Lantmannen and I said yes and he goes great, and then
> we continued a little bit more and then he hired me over the phone.
> Q. And from that one statement, you understood that he was offering
> you a guarantee irrespective of your performance, irrespective of any
> other factors, that you would be guaranteed five years of employment
> with Lantmannen?
> A. Yes.

*Id.* at 55:12-21.  The Court concludes that Ms. Tucker's affidavit is consistent with

her deposition testimony and rejects Lantmännen's request to strike PSAMF ¶ 15.

Lantmännen also requests that the Court strike PSAMF ¶ 16 because of Ms.

Tucker's deposition testimony that "the offer letter set forth the terms of her

employment with Lantmännen," which Lantmännen contends contradicts Ms.

Tucker's affidavit.  DRPSAMF ¶ 16.  Ms. Tucker argues that her deposition testimony

in fact supports her affidavit.  *Pl.'s Opp'n to Def.'s Req. to Strike* at 3-4.

The parties disagree on how to interpret the following exchange from Ms.

Tucker's deposition in the context of PSAMF ¶ 16:

> Q. I'll ask it a different way, I apologize, that was a complex question.
> Do you agree, as you sit here today, that this offer letter accurately
> described the terms of your employment at Lantmannen?
> A. Yes, I agreed to it.

*Oct. Tucker Dep.* at 72:2-7.  The Court is unpersuaded by Lantmännen's contention

that this exchange contradicts Ms. Tucker's affidavit, which merely supplements her

deposition testimony with her reaction to the offer letter.  Therefore, the Court rejects Lantmännen's request to strike PSAMF ¶ 16.

Finally, the Court observes that Local Rule 56(e) provides that if a party "contends that an individual statement of fact should not be considered by the court, the party may include as part of the response that the statement of fact 'should be stricken' <u>with a brief statement of the reason(s) and the authority or record citation in support</u>."  D. ME. LOC. R. 56(e) (emphasis supplied).  Lantmännen's objections to PSAMF ¶¶ 14-16 run from the bottom of page 8 to the middle of page 15, hardly a "brief statement."

The Court rejects Lantmännen's denial of PSMAF ¶ 14 and denies Lantmännen's requests to strike PSAMF ¶¶ 15 and 16.

### 3.    PSAMF ¶¶ 18 and 19

PSAMF ¶ 18 reads:

> Shortly after Tucker began her employment, Minden showed her the sales goal for the calendar year 2017 and the current sales which were well below the sales goal for the year.

PSAMF ¶ 18 (citing *Tucker Aff.* ¶ 4).  PSAMF ¶ 19 reads:

> Minden told Tucker not to worry about the sales goal for the year as the goal did not apply to her given, she only started in April as opposed to the beginning of 2017.  Minden told Tucker to focus on increasing the sales which she did.

PSAMF ¶ 19 (citing *Tucker Aff.* ¶ 4).

Lantmännen requests that the Court strike PSAMF ¶¶ 18-19 first on the ground that in her deposition testimony, Ms. Tucker failed to identify who at Lantmännen showed her the sales figures.  DRPSAMF ¶¶ 18-19.  But Lantmännen

cites a portion of Ms. Tucker's deposition in which she was asked to identify Exhibit Number 14 and whether she agreed that the figures on Exhibit Number 14 looked accurate.  *Oct. Tucker Dep.* at 95:11-25.  Lantmännen's counsel never asked Ms. Tucker to identify who showed her the sales figures on Exhibit Number 14, and, at least in the portion of the deposition cited in Lantmännen's request to strike, Ms. Tucker was not asked about the context surrounding her review of Exhibit Number 14.  Thus, Ms. Tucker's affidavit, which confirmed that Mr. Minden showed her the 2017 sales figures, does not contradict her earlier deposition testimony.

Next, Lantmännen requests that the Court strike PSAMF ¶¶ 18 and 19 because they are based on Ms. Tucker's self-serving affidavit, but as *Colantuoni* and *Verrier* explain, a party is entitled to rely on her own affidavit, self-serving or not, so long as it is based on personal knowledge and does not fit within the narrow restriction against the use of a late-filed affidavit to contradict clear prior testimony and to generate a factual issue to defeat a dispositive motion.

Third, Lantmännen asserts that "not once during Plaintiff's three depositions did Plaintiff testify that such a conversation between her and Mr. Minden occurred" and that Ms. Tucker "did not depose nor otherwise elicit testimony from Mr. Minden to provide support for this alleged conversation."  DRPSAMF ¶ 18.  But on this point, Lantmännen has it backwards.  As *Colantuoni* and *Verrier* explain, a party is free to fill in the gaps in discovery with a late-filed affidavit.  The restriction is only against affidavits which contradict "clear answers to unambiguous questions."  *Colantuoni*,

44 F.3d at 4-5. Lantmännen has pointed to no clear answers to unambiguous questions that would trigger the rule against changed testimony.

Fourth, Lantmännen contests that "Plaintiff, and her counsel, had three opportunities (October 8, 2021, December 16, 2021, and May 5, 2022 depositions) to put such testimony on the record. They did not do so." DRPSAMF ¶ 18. But each of these depositions was noticed by Lantmännen attorneys to question Ms. Tucker. *Oct. Tucker Dep.* at 1-175; *Dec. Tucker Dep.* at 1-62; *Stipulated R.*, Attach. 32, *Dep. of Rinda Tucker - May 5, 2022* at 1-16 (*May Tucker Dep.*). Ms. Tucker's counsel, Attorney Loranger, did not question his own client during Lantmännen's depositions, nor would it be typical for the attorney for the party being deposed to ask questions of his own client. The failure to ask a clear question and obtain an unambiguous answer rests not with Attorney Loranger but with Lantmännen's counsel.

The Court denies Lantmännen's requests to strike PSAMF ¶¶ 18-19.

### 4. PSAMF ¶¶ 38, 39, 53 and 54

PSAMF ¶ 38 reads:

In 2017, salesman Greg Lutes fell $896,335.00 short of his sales goal.

PSAMF ¶ 39 reads:

Defendant did not discipline Lutes for falling short of his 2017 sales goal.

PSAMF ¶ 53 reads:

In 2018, salesman Greg Lutes fell $1,007,432.00 short of his sales goal.

PSAMF ¶ 54 reads:

Defendant did not discipline Lutes for falling short of his 2018 sales goal.

Lantmännen requests that the Court strike PSAMF ¶¶ 38, 39, 53, and 54 because Mr. Lutes did not join Lantmännen until February 2019.  DRPSAMF ¶¶ 38-39, 53-54.  In support of these statements of material fact, Ms. Tucker cites a spreadsheet Lantmännen produced in discovery.  *See Pl.'s R.*, Attach. 4, *Lantmännen Sales by Salesperson 2017-2019* (*Lantmännen Sales by Salesperson*).   This spreadsheet contains the names of fifteen salespeople at Lantmännen, one of which is G. Lutes. *Id.*  The spreadsheet also lists sales figures for Mr. Lutes from 2017 through 2019. *Id.*

The Court does not know what to make of the fact that Lantmännen's own documents reflect sales for Mr. Lutes before he became employed with Lantmännen. Lantmännen may well have an explanation for why its spreadsheet contains sales for Mr. Lutes before it hired him, but rather than explain its own document, Lantmännen forcefully denounces PSAMF ¶¶ 38, 39, 53 and 54 as "complete fabrication[s]."  DRPSAMF ¶¶ 39, 53-54.  Maybe so, but if the spreadsheet is a fabrication, it is Lantmännen's fabrication.  Given the Court's obligation to view conflicting evidence in the light most favorable to Ms. Tucker, the Court denies Lantmännen's requests to strike PSAMF ¶¶ 38-39 and 53-54.

### 5.    PSAMF ¶ 56

PSAMF ¶ 56 reads:

> Director of Sales, Ralph Hoffman, asked for a recommendation to replace Minden.

In support of this statement of material fact, Ms. Tucker only cites her unverified complaint.  PSAMF ¶ 56 (citing *Compl.* ¶ 9).

20

First Circuit law is clear: a party may not rely on an unverified complaint to support a statement of material fact. *Fragoso v. Lopez*, 991 F.2d 878, 887 (1st Cir. 1993) ("We have made it crystal clear that, in opposing summary judgment, a litigant 'may not rest upon mere allegations in, say, an unverified complaint'" (quoting *Kelly v. United States*, 924 F.2d 355, 357 (1st Cir. 1991)); *Huard v. Kennebec Cnty.*, 1:16-cv-00473-GZS, 2019 U.S. Dist. LEXIS 44834, at *34 n.17 (D. Me. Mar. 19, 2019) ("[T]he Court has disregarded any facts in Plaintiff's Statement of Material Facts that were supported solely by citation to the Amended Complaint").

The Court omits PSAMF ¶ 56.

### 6.      PSAMF ¶¶ 70, 71, and 72

To understand the controversy about these statements of material fact, it is necessary to posit PSAMF ¶ 69:

> On November 19, 2019, Tucker hosted a showing at PFG in Springfield, Massachusetts.  Lutes testified that as of the time of the Springfield event, he had a good relationship with Tucker, and he never raised his voice at her.

PSAMF ¶ 70 then claims:

> Lutes' assertion is false.  He had a troubled relationship with Tucker, and he frequently raised his voice to her.

PSAMF ¶ 71 goes on to state:

> After the showing, Lutes verbally abused Tucker, accusing Tucker of doing a terrible job and further demeaning her by stating, "you really think you are good at sales."

PSAMF ¶ 72 then concludes:

> Despite the accusation, Performance Foods bought most of Defendant's product from the event.

Lantmännen requests that the Court strike PSAMF ¶ 70 on the grounds that it is supported only by Ms. Tucker's "self-serving affidavit" and consists solely of Ms. Tucker's opinion.  As noted earlier, Federal Rule of Civil Procedure 56(c)(4) allows parties opposing a motion for summary judgment to submit affidavits so long as they are based on personal knowledge.  Furthermore, lay opinion evidence is admissible under Federal Rule of Evidence 701 so long as it is "rationally based on the witness's perception," "helpful to clearly understanding the witness's testimony," and "not based on scientific, technical, or other specialized knowledge."  The Court concludes that Ms. Tucker's opinion of her relationship with Mr. Lutes is permissible lay opinion evidence and denies Lantmännen's request to strike PSAMF ¶ 70.

Lantmännen's requests to strike PSAMF ¶¶ 71 and 72 are based on a different proposition.  For each of these asserted facts, Ms. Tucker cites only her own unverified complaint for support.  *See* PSAMF ¶ 71 (citing *Compl.* ¶ 18); PSAMF ¶ 72 (citing *Compl.* ¶ 19).  For this reason, Lantmännen requests that the Court strike PSAMF ¶¶ 71 and 72.  Ms. Tucker responds weakly and without citation that Lantmännen "submitted Plaintiff's complaint into the summary judgment record," and the complaint "should, therefore, be available for use by Plaintiff."  *Pl.'s Opp'n to Def.'s Req. to Strike* at 6.  But if a reference to an unverified complaint is inadmissible for summary judgment purposes, it does little good to claim that the other party is also violating the rule.  Further, Attorney Loranger conceded at oral argument that a fact supported only by a citation to an unverified complaint cannot be considered at the summary judgment stage.

22

Ms. Tucker has two fallback positions. First, she says that Lantmännen "submitted in the summary judgment record Tucker's sworn verified Maine Human Rights [Commission] Complaint in which she made the subject allegation." *Id.* Next, she cites her own deposition in support of the statement of material fact. *Id.* at 7. Neither argument responds to Ms. Tucker's failure to comply with Local Rule 56(f), which requires that an assertion of fact "shall be followed by a citation to the specific page or paragraph of identified record material supporting the assertion." D. ME. LOC. R. 56(f). The local rule further provides that a court "may disregard any statement of fact not supported by a specific citation to record material properly considered on summary judgment," and "shall have no independent duty to search or consider any part of the record not specifically referenced in the parties' separate statement of facts." *Id.* Ms. Tucker simply did not comply with the rule and the Court will not consider her attempts to backfill empty responses.

This leaves the Court only with a citation to the unverified complaint. Here, as the Court just noted, First Circuit law is clear: a party may not rely on an unverified complaint to support a statement of material fact. *Fragoso*, 991 F.2d at 887 ("We have made it crystal clear that, in opposing summary judgment, a litigant may not rest upon mere allegations in, say, an unverified complaint" (internal quotation omitted)); *Huard*, 2019 U.S. Dist. LEXIS 44834, at *34 n.17 ("[T]he Court has disregarded any facts in Plaintiff's Statement of Material Facts that were supported solely by citation to the Amended Complaint").

The Court grants Lantmännen's requests to strike PSAMF ¶¶ 71 and 72.

23

### 7.    PSAMF ¶ 89

PSAMF ¶ 89 reads:

> Despite the drop in sales, at the time of [her] termination, Tucker's sales
> were on the upswing, and she had just signed up a major account.

Lantmännen requests that the Court strike PSAMF ¶ 89 on the grounds that

other evidence in the record suggests Ms. Tucker's sales were below her target in the

weeks before her termination and that her affidavit, which is "self-serving," is the

sole basis of support for the statement.  DRPSAMF ¶89.

From the Court's perspective, there is no direct contradiction between Ms.

Tucker's testimony and the affidavit.  Ms. Tucker does not claim that her sales figures

in the run-up to her termination had met target, only that they were "on the upswing"

and that she "had just signed up a major account."   Further, as the Court has

discussed, there is no blanket prohibition against affidavits, self-serving or otherwise.

The Court denies Lantmännen's request to strike PSAMF ¶ 89.

### 8.    PSAMF ¶ 95

To understand  PSAMF ¶ 95, it is necessary to provide context by quoting

PSAMF ¶ 94:

> Hoffman claims that beginning in late 2018, Tucker "lost her drive, her
> ambition, and that came to the forefront as she said she does not really
> need to work."

PSAMF ¶ 95 reads:

> Hoffman's assertion is false; from late 2018 until her termination,
> Tucker continued to diligently work her accounts and never lost her
> ambition.

Lantmännen asks the Court to strike PSAMF ¶ 95 on the grounds that it is only supported by a citation to Ms. Tucker's "self-serving" affidavit and contains only her personal opinions.   DRPSAMF ¶ 95.   For the reasons expressed in the Court's discussion of Lantmännen's request to strike PSAMF ¶ 70, the Court denies Lantmännen's request to strike PSAMF ¶ 95.

### 9.   PSAMF ¶¶ 97 and 98

To understand PSAMF ¶¶ 97 and 98, it is necessary to provide context by quoting PSAMF ¶ 96:

> Lutes testified that he had between 6-8 discussions with Tucker about entering day to day activities into the CRM system.

PSAMF ¶ 97 reads:

> Lutes' assertions are false.  He never had a discussion with Tucker about entering her day-to-day activities into the CRM system.

PSAMF ¶ 98 reads:

> Tucker did enter all her entries into the CRM system.

Lantmännen requests that the Court strike PSAMF ¶¶ 97 and 98.  DRPSAMF ¶¶ 97-98.   As regards PSAMF ¶ 97, Lantmännen claims that Ms. Tucker's affidavit contradicts her prior testimony.  DRPSAMF ¶ 97 (citing *May Tucker Dep.* at 12:15-18).  Additionally, during her May 2022 deposition, Ms. Tucker testified that "[Mr. Lutes] said not to put everything into CRM of all the calls." *May Tucker Dep.* at 12:11-12.

In her response, Ms. Tucker explains that Mr. Lutes' contention was that he had six to eight discussions with her about her failure to enter day-to-day activities

into the CRM system and she maintains that his accusation is false.  *Pl.'s Opp'n to Def.'s Req. to Strike* at 8-9.  She says that her testimony in May 2022 referred to Mr. Lutes' instruction not to put everything into the CRM system, not her failure to enter day-to-day activities.  *Id.*

As clarified by Ms. Tucker, the Court agrees that her prior deposition testimony does not contradict her later affidavit, but the Court has amended PSAMF ¶ 97 to be more consistent with her clarification.  PSAMF ¶ 97 now reads:

> Mr. Lutes' assertions are false as he never had a discussion with Ms. Tucker about her failure to enter day to day activities into the CRM system.

With this change, it is unnecessary to alter PSAMF ¶ 98.[5]  The Court denies Lanmännen's requests to strike PSAMF ¶¶ 97 and 98.

### 10.   PSAMF ¶ 105

To understand PSAMF ¶ 105, it is necessary to provide context by quoting PSAMF ¶ 104:

> Lutes also testified that on five or six times he issued and documented to Tucker "Plans to correct deficiencies."

Lantmännen admits PSAMF ¶ 104.  DRPSAMF ¶ 104.  PSAMF ¶ 105 reads:

> Lutes' assertion is false.  He never had a discussion with Tucker about Plans to correct deficiencies.

---

[5]     Lantmännen also maintains that the Court should strike PSAMF ¶ 98 because it "contradicts Plaintiff's own testimony where she stated that she did not enter everything from her calendar into the CRM and would make her own subjective decisions about what information warranted entry into the CRM system."  DRPSAMF ¶ 98.  Based on Ms. Tucker's clarification that Mr. Lutes instructed her not to enter everything into the CRM system, and construing the record in the light most favorable to Ms. Tucker, the Court concludes that PSAMF ¶ 98 simply means that Ms. Tucker entered all that was required into the CRM system and accordingly rejects Lantmännen's denial insofar as it rests on the alleged contradiction.

Lantmännen requests that PSAMF ¶ 105 be stricken.  DRPSAMF ¶ 105.  First, Lantmännen says that this statement contradicts Ms. Tucker's deposition testimony. *Id.* (citing *Dec. Tucker Dep.* at 40:18-25).  Next, Lantmännen points out that PSAMF ¶ 105 is supported only by a citation to Ms. Tucker's "self-serving" affidavit.  *Id.*  In response, Ms. Tucker concedes that in her deposition, she described one instance when Mr. Lutes let her know that he was unhappy with her performance but argues that her affidavit nevertheless refutes Mr. Lutes' allegation and does not contradict her deposition testimony.  *Pl.'s Opp'n to Def.'s Req. to Strike* at 9-10.

In its request to strike, Lantmännen cites the following interchange from Ms. Tucker's December 2021 deposition:

> Q.  Can you read that note for me, please?
> A.  19th, "Greg yells at me at PFG, got right into my face in the parking lot, had not enough sell sheets, not prepared, threatening my job."
> Q.  At this point -- November 19th, 2019, at this point were you aware that Greg Lutes was not happy with your performance?
> A.  Yes, after I got an e-mail that evening.

*Dec. Tucker Dep.* at 40:18-25.  In the Court's view, this interchange does not contradict PSAMF ¶ 105.  PSAMF ¶ 105 concerns Mr. Lutes' discussions with Ms. Tucker "about Plans to correct deficiencies," and although the November 19, 2019 interchange could have been about plans to correct deficiencies, there is no suggestion in the deposition transcript that this was the case.  Furthermore, as the Court noted previously, Ms. Tucker's affidavit is not inadmissible simply because it is self-serving. *Verrier*, 2022 U.S. Dist. LEXIS 144116, at *75.  The Court denies Lantmännen's request to strike PSAMF ¶ 105.

### 11.    PSAMF ¶ 117

27

PSAMF ¶ 117 reads:

In 2019, salesman Frank Swindle fell $650,362.00 short of his sales goal.

For this proposition, Ms. Tucker relies on the spreadsheet produced by Lantmännen showing the performance of individual salespersons relative to their sales goals. *Id.* (citing *Läntmannen Sales by Salesperson*).

Lantmännen says that PSAMF ¶ 117 is "demonstrably false." DRPSAMF ¶ 117. Instead, it contends that Mr. Swindle "**exceeded** his sales goal by $650,362 – 16% more than his target." *Id.* (emphasis in original). Ms. Tucker did not respond to Lantmännen's request to strike PSAMF ¶ 117.

Based on the Court's review of Lantmännen's spreadsheet, which sets forth sales figures for fifteen Lantmännen salespeople, including Mr. Swindle, from 2017 through 2019, Lantmännen is correct. The sales figure for Mr. Swindle in 2019 is $650,362 higher than his sales goal. As the record citation does not support the statement of fact, the Court grants Lantmännen's request to strike PSAMF ¶ 117.

### 12.   PSAMF ¶¶ 122-126, 141-144

PSAMF ¶¶ 122-126 read:

Lutes also made ageist comments to Tucker.

PSAMF ¶ 122 (citing *Compl.* ¶ 21).

Lutes told Tucker, "I guess I have to go to more appointments with you as I am much smoother at sales, but I guess you get rusty as you get older.

PSAMF ¶ 123 (citing *Compl.* ¶ 22).

On another occasion, Lutes said, "do I have to do your work for you, I guess you are slowing down.

28

PSAMF ¶ 124 (citing *Compl.* ¶ 23).

Hoffman also made ageist comments to Tucker.

PSAMF ¶ 125 (citing *Compl.* ¶ 24).

For example, Hoffman told Tucker that now that her kids were grown, and she was getting older, "maybe the job was too much for you."

PSAMF ¶ 126 (citing *Compl.* ¶ 25).  PSAMF ¶¶ 141-144 read:

Almost immediately after her hire, Lutes began to target Tucker.

PSAMF ¶ 141 (citing *Compl.* ¶ 13).

Lutes continually, and without merit, criticized Tucker's job performance.

PSAMF ¶ 142 (citing *Compl.* ¶ 14).

Lutes verbally abused Tucker and yelled at her.

PSAMF ¶ 143 (citing *Compl.*).

Lutes harassed Tucker almost every time they spoke.

PSAMF ¶ 144 (citing *Compl.*).

Lantmännen objects to each of these statements of material fact on the ground that they only cite the allegations in Ms. Tucker's unverified complaint.  DRPSAMF ¶¶ 122-26, 141-44.  Ms. Tucker first responds that Lantmännen submitted her complaint into the summary judgment record, meaning that it "should, therefore, be available for use by Plaintiff." *Pl.'s Opp'n to Def.'s Req. to Strike* at 10-13, 16-18. However, as the Court has said repeatedly, an unverified complaint is inadmissible to support or oppose a motion for summary judgment. *Fragoso*, 991 F.2d at 887; *Huard*, 2019 U.S. Dist. LEXIS 44834, at *34 n.17.  Next, Ms. Tucker points to the fact

that these allegations appear in her sworn and verified complaint to the Maine Human Rights Commission and her deposition testimony. *Def.'s Req. to Strike* at 10-13, 16-18. Maybe so, but Ms. Tucker failed to properly cite these sources of evidence in her original statements of material fact and she has not moved to amend her citations to reflect this expanded record. The Court expects that counsel must comply with the rules of the summary judgment process without prompting by opposing counsel and orders from the Court.

Therefore, the Court grants Lantmännen's request to strike PSAMF ¶¶ 122-126 and 141-144.

### 13.    PSAMF ¶ 134

PSAMF ¶ 134 reads:

> Women are allowed to work in industry, but they are expected to "be seen and not heard."

Lantmännen requests that the Court strike PSAMF ¶ 134 on the grounds that it is supported only by a citation to Ms. Tucker's "self-serving affidavit," and Lantmännen has countervailing evidence that women are employed and are prospering at the company. DRPSAMF ¶ 134. The Court rejects Lantmännen's self-serving objection. *See Verrier*, 2022 U.S. Dist. LEXIS 144116, at *75. Lantmännen's proposed countervailing evidence may create a disputed factual issue, but it is unavailing because the Court is required to view disputed facts in the light most favorable to Ms. Tucker, not Lantmännen. The Court denies Lantmännen's request to strike PSAMF ¶ 134.

### 14.    PSAMF ¶¶ 135, 136, 137, 138, 139, 145

Lantmännen requests that the Court strike PSAMF ¶¶ 135, 136, 137, 138, 139, and 145 on the ground that they are only supported by Ms. Tucker's "self-serving affidavit." DRPSAMF ¶¶ 135-39, 145. The Court rejects Lantmännen's self-serving objection, *Verrier*, 2022 U.S. Dist. LEXIS 144116, at *75, and denies Lantmännen's requests to strike each of these statements of material fact.

### 15.   PSAMF ¶ 140

PSAMF ¶ 140 reads:

> Tucker complained to Hoffman about how Lutes spoke to [her]. Hoffman, however, did not take any action in response.

Lantmännen requests that the Court strike PSAMF ¶ 140 because it is based solely on Ms. Tucker's "self-serving affidavit" and because, in its view, the statement contradicts Ms. Tucker's deposition testimony in which she conceded she "never made any complaints about age or gender discrimination to her superiors nor Human Resources." DRPSAMF ¶ 140 (citing *Oct. Tucker Dep.* at 138:4-11).

The Court rejects Lantmännen's self-serving objection. *Verrier*, 2022 U.S. Dist. LEXIS 144116, at *75. The Court also rejects Lantmännen's contention that this statement of material fact contradicts Ms. Tucker's testimony that she never made any complaints about age or gender discrimination to her superiors nor Human Resources. In the Court's view, PSAMF ¶ 140 neither states nor implies that the complaints Ms. Tucker expressed to Mr. Hoffman about Mr. Lutes were gender- or age-based. The Court denies Lantmännen's request to strike PSAMF ¶ 140.

## IV.    CONCLUSION

The Court GRANTS Lantmännen Unibake USA, Inc.'s requests to strike PSAMF ¶¶ 71, 72, 117, 122, 123, 124, 125, 126, 141, 142, 143, 144 and DENIES its requests to strike PSAMF ¶¶ 10, 15, 16, 18, 19, 38, 39, 53, 54, 70, 89, 95, 97, 98, 105, 134, 135, 136, 137, 138, 139, 140, 145.  The Court further OMITS PSAMF ¶ 56.

SO ORDERED.

/s/ John A. Woodcock, Jr.
JOHN A. WOODCOCK, JR.
UNITED STATES DISTRICT JUDGE

Dated this 14th day of December, 2023